May it please the Court. My name is Sarah Gannett. I represent the appellant in this matter, Mr. Eric Mundy. With the Court's permission, I'd like to reserve three minutes for rebuttal, please. Granted. Thank you. This case presents two issues. First, whether Philadelphia's livestock procedures sufficiently limit police officers' discretion to search closed containers under the Supreme Court's authority in Wells and this Court's authority in Salmon. And second, whether the District Court properly applied the enhancement for trafficking narcotics in a school zone under Section 2D1.2 of the Sentencing Guidelines when Mr. Mundy merely possessed with intent to distribute. I propose to begin with the search issue unless the Court wishes otherwise. Both the Supreme Court and circuit precedent are very clear that an inventory search is only valid if police follow standard procedures designed to limit their discretion and prevent the use of an inventory search for investigative purposes. Here, the police searched a bag, a box, and a bag within the box, all in the trunk of Mr. Mundy's car, in the complete absence of any policy governing the search of closed containers. Well, but isn't this case, this is an interesting case. I'm sure we'll have a lot of questions for you, so I'm sorry to interrupt so early, but you mentioned Salmon and Wells. I mean, isn't this case distinguishable that there was some standardized policy here? Well, in actuality, in Salmon, there was some standardized policy. There was some indication that there was a policy requiring a search. And that's essentially what we have in this case, is a policy that requires a search. A policy that says no locked areas are to be forced open? Well, when it says... Does it say that? It does say that. What's the natural inference? If you're not to force open a locked area, then isn't the inference, if it isn't locked, look at it to make sure there isn't something valuable that somebody who later comes to pick up their car will say, look, we left the car with you and it had this diamond ring in this box. Now the diamond ring isn't there, so you owe us for the diamond ring. Why isn't the policy obvious that you can look into closed containers, but you can't if they're locked? The policy doesn't discuss containers. What the policy says is that no locked areas, including the trunk area, will be forced open. And I think the reasonable inference from that is that we're discussing areas of the car. We're not discussing the contents of the car. We're not discussing containers. Is there any argument about the trunk? I know they got the key from your client and opened the trunk. Is there any question whether that was a problem? I don't think there is under this policy. Okay, fine. The court's ruling in Salmon was very specific that there has to be criteria both to limit when to search and the scope of the search. And the court said particularly as to the treatment of closed containers. Well, I think Judge Ellis' point's a good one. Isn't the natural inference based on the language that it's anything that can't be sort of opened without a great deal of trouble? Well, I think we have to read the language of the policy, which says no locked areas. It doesn't say no locked containers. It doesn't say all contents must be searched. And in researching this case, I looked at a number of different policies from different jurisdictions, all of which are much more narrow and fit much better Salmon's... Don't you have to be arguing not that this could be a more precise policy, but that this policy is constitutionally deficient? That's correct. And what this court held in... I'm sorry. Go ahead. What this court held in Salmon is that if a policy does not speak particularly as to the treatment of closed containers, then it's constitutionally insufficient. And that is based almost directly on the Supreme Court's ruling in Wells. Salmon didn't involve that, did it? What was the... It did involve closed containers. It involved a gun inside a gym bag inside the trunk of a car. But the detective from Westmoreland County admitted that they had no procedures at all, right? No. He said that there was a policy requiring a search of the vehicle, but there were no criteria as to whether or not to open a closed container. And that's exactly... But he also... I think I'm quoting. I thought... I'm quoting from what he says. There's no written policy regarding inventory search procedures. Well, there's no need for there to be a written policy. The need is that there is a policy and it can be written or unwritten. And so testimony... Well, here we have a written policy. Here we have a written policy. Here we have a written policy for inventory procedures... Yes. ...that says if you don't have to force it open, you can inventory it. Not you can. You This is where the discretion comes in. If it's an item of value, right? Well... Isn't that the... I think we have... ...the key phrase here? I think the key phrase is... or the key word is area. And you say... the court says if it's not locked, you are to open it. But that's not what the policy says. What the policy says is that no locked areas will be forced open. So under your theory, hypothetically, if container replaced area, we wouldn't be here today. And the court made that very clear in Salmon. And there have been numerous policies recited by numerous courts. Do you really think a police officer reads this sort of like a Talmudic scholar and sees a difference between areas and containers? I think this court read it that way. And I think this court put police departments on notice about what their requirements were when it issued its opinion in Salmon. The other thing that I think is important is that this focus... There was an inventory search. You open up the glove compartment, which is open, and there is a bag in the glove compartment. It's a sort of silk bag, the kind of bag that you would ordinarily put a valuable piece of jewelry in. Would you look in that? Under... unless there were criteria telling you whether or how to look at it, you should not. And the court in Salmon went... there are many purposes for inventory searches. One of them is to protect valuables. One of them is to protect against danger. And the court in Salmon recounted all of those purposes and said, you know, irregardless of those purposes and the legitimacy of those purposes, there must be a policy in particular as to closed containers. And what police departments in other areas have done in, for instance, the circumstance Judge Ellison mentioned... Well, let's go back to my hypothetical. Is that a closed container, one of those silk bags? It is a closed container. Why is it closed? Well, it's closed if you can't... Let's suppose that it's a drawstring, and let's suppose the drawstring is largely open. Well, if the item's in plain view, that's another issue. It isn't in plain view. You have to move the silk bag to look in it, even though the drawstring isn't pulled tight. You don't have to loosen the drawstring. I mean, I think that that's a very fine distinction. Yes, it is. And we're asking police officers to do this kind of thing, aren't we? I don't think we are. I mean, I think what we're asking police officers to do is to follow a policy. And I think what the court said in Salmon is the policy should deal with closed containers. And there are multiple examples of policies that are not nitpicky and not difficult to follow and don't require any kind of chapter and verse recitation. You mentioned before about written policy versus, say, routine. I didn't see any, and maybe you can correct me, I didn't see any testimony on a routine dealing with closed containers. There is none here. And had the officer testified that it was routine policy to open all closed containers in order to determine whether there were valuables inside, then the result would be different here. But the police department could have said, search areas where you would search of the shaving bag in Richardson. They could have said locked containers need not be opened. Instead, they said locked areas. In Morris, which is an unpublished decision in this circuit, there was a policy from Wilkins Township where the owner and operator is asked to remove all valuables. And after that, all closed containers are opened. And then there's a subsequent procedure for dealing with locked containers. In D.C., there is a policy that says any containers such as boxes or suitcases shall be opened. In the First Circuit, in the Richardson case, there is a policy that says search all unlocked containers. So is it fair to say, then, that you don't have any problem with looking into unlocked containers as a constitutional matter? You just think that as a constitutional matter, they have to be told specifically they can do it, and they can't exercise their discretion to draw the inference from no locked areas to, if it's open, if it's not a locked area, we can look in it. I don't think that's a permissible inference. What may be permissible, and that is sort of left up in the air in the Supreme Court cases, is whether a policy could be implemented that said, in your discretion, if it looks like a valuable item, open it, or don't. But at a minimum, that would be a policy. That would meet the first requirement, which is that there is something bounding discretion, so that we don't have arbitrary decisions being made and inconsistent decisions being made by police officers that disrupt the balance. I worry about this, though. In this policy, they're required to inventory personal property of value. Doesn't that tell the reasonable police officer that if you find a bag with a drawstring, if you find a box, if you find a suitcase, anything like that, then you look in it. If you find a gum wrapper, if you find a pen, a broken pencil, you don't. I mean, isn't that the line of demarcation? I understand that it's pretty broad. It tells them to look at most things and only avoid the silly things I just described, but isn't that a policy? Well, I don't think it is. I think it's a restatement of the purpose of an inventory search, which is to catalog the valuables in a vehicle. And it's different from the broad policies that exist in other places that say, search all contents. That is a policy that tells you how to conduct the search. Look for valuables is what an inventory is for. There's no bounding of discretion in that type of a statement. What's the significance for purposes of our analysis of the fact that there was no actual inventory completed, no written inventory? I think it's very significant. And in fact, the Supreme Court in, I believe it was Wells, said that it was very significant that there was no evidence of any inventory actually being produced. And the reason that's significant is that the whole purpose of the policy is supposed to balance the individual's privacy against the legitimate community caretaking interests. That was Justice Brennan's concurrence. That wasn't the opinion for the court. That's correct. It was the concurrence, not the opinion for the court. However, that concurrence is echoed in subsequent decisions. Almost every decision that's cited in the briefs includes some reference by the court to the fact that an inventory was prepared. None of these cases say an inventory was not prepared, as occurred here. Why would it be necessary to prepare an inventory if you've gone through it, there's nothing of value in it, until you've come to this box, it has drugs in it, you call the drug people, they come get it, and they take over. Why bother with an inventory? Well, there was at least one item of value other than the drugs in the car, and that was the toolkit. Yeah, but once you find drugs, doesn't that put this in a different category altogether? Well, the question is, is this an investigative search or is this an inventory search? And in all of the inventory cases, even when there has been some investigative purpose as well, the inventory has been completed. And here, the fact that it wasn't completed only lends support to the idea that the search was a part of a ruse. It's all part of a pretext, right? It's all part of a pretext. If we're not convinced it was a pretext, then the significance of no prepared inventory drops away. I think that no prepared inventory is circumstantial evidence that this was a pretextual search. In other words, if we're not convinced that that's the only purpose for it, in other words. Let's give you two extra minutes. Can you give both sides two extra minutes? Thank you. Go ahead. Well, I think that here you also have, in addition to the lack of an inventory list, you have sort of suspicious circumstances in that these officers claim to have seen that is the marijuana bud and were never presented at trial. They claim to have smelled an overwhelming odor of cocaine that neither the narcotics officer nor the person who towed the car reported at all. And the focus of those officers on the drug... When you say they didn't report it, were they ever asked and denied it? They were. They testified at the suppression hearing. And the narcotics officer said, remember that the officers testified, they immediately closed the trunk as soon as they saw the drugs. The narcotics officer came to the scene and opened the trunk, and he was asked, did you smell anything unusual? And he said no. And the person who towed the car, remember they said they could smell the cocaine even in the passenger compartment of the car, was asked, what did you smell? And he said, I smelled a new car smell. And so there really is some sort of suspicious testimony by these officers that, combined with the lack of the inventory, really puts this into that category of cases where a policy is important. They called the drug dogs, too. They did call the drug dogs. But they didn't come for some reason? They were unavailable. Unavailable. Busy. So you're making two arguments. One, this policy is facially invalid because it in no way addresses what to do when an officer comes upon a closed container. And if that argument fails under the totality of the circumstances, this evidence should have been suppressed because this is the type of ruse. The circumstantial evidence suggests that this is really an investigatory search, not an inventory search. Well, I think that is what the evidence suggests, candidly. I think if the court finds the policy to be satisfactory and to meet the standards set in Salmon, I think the case law says that the ruse problem disappears because the policy is bounding the discretion and preventing really the ruse from taking over the inventory. Because you've got dual purposes for the search. You have the dual purposes. And the one purpose is cabined by the policy. Thank you, Counsel. Thank you. Cleared under rebuttal. May it please the Court. My name is Mary Kay Costello, and I represent the United States in this appeal. The United States respectfully requests that the court affirm the district court's decision denying the defendant's motion to suppress. The United States also requests that this court affirm the district court's decision to apply the two-level enhancement to the conviction in this case. I want to start out by addressing some of the questions that this court raised with respect to the inventory search in this case. First, I want to make clear that there was an inventory prepared in this case in the form of property receipts. And the record is clear on this. What happened at the scene was a livestock inventory was initiated. A livestock impoundment was initiated. The officers had no discretion at that time but to inventory the vehicle. As they did that, according to Memorandum 02-4, they discovered in the trunk the drugs. As soon as the drugs were discovered, the officer closed the trunk. At that point, the inventory and the livestock impoundment were over and the investigation began. They called members of the narcotics field unit to the scene. They took possession of the vehicle. They obtained and executed a search warrant, and they produced an inventory on property receipts of the search warrant. So there was no livestock inventory because the livestock was never fully completed. The car wasn't impounded. It was taken as criminal evidence and searched, pursuant to a search warrant in this case. So I want to make clear that there was something. Can you point to that in the record? Yes, Your Honor. That is at the record, page 53. It's one of the sites. It's testimony then, right? Yes. Beginning on page 53, page 15 of the transcript, and this is the testimony, I believe, of Officer Chabot, who looked in the trunk. He was questioned. Now, at that point, and this is the point at which he looked in the trunk, the livestock and the narcotics investigation began. He said yes, and then he called the narcotics field unit out. Now, if we also look at page 61, there's a representation by Mr. Barbieri who had this case at the district court level, and he explained, and there's further testimony on this later, but the car was searched by Officer Trappler. Where are you on 61? Page 48 of the transcript at the very beginning, Mr. Barbieri, who is the Assistant U.S. Attorney, who handled the case at the district court level, and he explained to the court, the car was searched by Officer Trappler, and he produced an inventory of the items seized on property receipts. That's the only inventory of items taken from the car. And then Officer Trappler's testimony comes later, pages 109 through 110. And on page 19, for example, of the transcript, as Officer Trappler is testifying, being at line 20, he says, that's correct, when I confiscated it, I typed up a property receipt for the drugs, placing everything onto the property receipt. And he goes on, and then on page 18, he talks about the other items that were found in the car. And he goes on with his testimony. He says on page 110 of the record and page 23 of the transcript at line, beginning at line 11, Officer Soto handed over to me $1,107 U.S. currency that was placed on a property receipt. He also described there was a cell phone found, two invoices with the defendant's name on it, and so on, Your Honor. So the inventory was a certain – So assuming that $1,100 was not fruits of an illegal transaction, then that would have been returned back to Mr. Mundy. I believe that's correct, Your Honor. Yes. But the point that I'm trying to make is that it's not true that there was no inventory. It's just that the livestock was stopped, and this became an investigation, and the search warrant procedure took over. And it also points out that even if there was some investigatory purpose in this inventory search, that is not enough to invalidate the search. And that's clear. It's Colorado v. Bertine for the United States Supreme Court. Also, this court, United States v. Frank, explicitly held that. United States v. Frank, Your Honor. Frank. And this court, Judges Chigares and Hardeman also recently were sat on a panel and reaffirmed that finding, that holding from Frank, that even if there is some investigatory purpose, that is not sufficient to invalidate inventory search. There's no question how this inventory search began. As an inventory, this was a livestock vehicle impoundment. The officers – That's the easy part of the case. The hard part of the case is we have a policy that we're being asked by you to find does not provide unfettered discretion to the officers. And how does the requirement that all property of value be inventoried restrict discretion with respect to containers? Your Honor, the policy issue here, Memorandum 02-4, limits discretion in two ways. It tells officers exactly what they're searching for, and it tells them exactly where to search. And that's in all accessible areas so long as they don't have to be forced open. And it's not true. I mean, there's plenty of case law on this. It's cited in my brief, and I will cite it here for this court as well. That's to be valid, the policy has to say close container. It explicitly has to deal with what an officer should do. There's no case that – But you're asking us to equate area with container, which your adversary obviously thinks is wrong. Well, I understand that she thinks that's wrong, but there's no other way to do an inventory for personal items of value other than to look in a closed container that's found in an accessible area. We have to look at a policy. We can't – that's what the court has told us to do. That's what our precedent tells us to do. Why should we equate area with container? There's no reason not to. I mean, it's common sense, Your Honor. We're talking about officers who are on the scene, who are looking at this policy and have to make it real. There's no opinion that holds that police officers are allowed no discretion whatsoever in deciding what to do. No, but in Wells, the Supreme Court said there's no guidance regarding closed containers, and that's unconstitutional. Now, the difference between Wells and here is the majority in Wells specifically said there was no policy at all. That's correct, Your Honor. It just seems incongruous why all of the discussion at the Supreme Court has been about closed containers, and here we have a policy that doesn't even mention closed containers. It talks about personal property of value. We don't have any case law to guide us in respect to personal property of value. That's correct, Your Honor. First of all, Wells is different for a couple of different reasons. One, because as you noted, there was absolutely no policy in place at the time of the search in that case. The situation is different. Two, that case involved a locked suitcase that was found in a trunk that the officers forced open. Now, Memorandum 02-4 explicitly prohibits that sort of conduct, so it does provide boundaries to officers in performing their search. In other words, if the policy that is at issue here had been in effect there, there would have been a clear violation of the policy. That's correct, Your Honor. Absolutely. We'd be dealing with a different situation here. But basically what they're asking us to do is to come up with a policy that describes what an officer is supposed to do in every possible situation. No, they're just saying stake your ground. Put in this policy that you open all closed containers or put in this policy you don't open closed containers or perhaps you open containers that are opaque. That's not so hard. Well, it's not so hard, Your Honor, but it doesn't necessarily solve all questions. But in any event, it does a better job of solving the questions than saying open things of personal value. What has value? How do you define value? I think common sense, common usage, a diamond ring, cash, cell phone. How much cash? Any amount of cash. Maybe not pennies. A quarter? A quarter is okay. A dollar? I don't know. If an officer opened a box to see what was inside it because he's tasked with inventorying the contents of the vehicle and he saw a quarter, I'm sure he would put change on the inventory. I mean, that's common sense. That's reasonable behavior. I mean, it's perfectly reasonable for the officer to look at Memorandum 02-4 and then when he's actually in the car doing what he's told to do is looks in an open and unlocked closed container so that he can perform the inventory. That's what Memorandum 02-4 tasks him with doing. That scope is limited, and it's constitutionally permissible to limit the scope in that way. Limited how? It's limited because cash. It seems to me like your argument is that personal property of value is tantamount to telling the officer to open any closed container. Any closed container might contain that diamond ring. That's correct, Your Honor. And certainly the officer would be remiss in a case if he didn't look inside a closed container for property of value. Unless it's locked. Unless it's locked, exactly. I mean, if he didn't look in there and there's a diamond ring in there, then he's not protecting the police department from claims of lost items or from claims of theft. The reasons behind the warrant exception are clearly carried out by this policy. Is there any testimony about what the routine is? I mean, we all can read what the policy is. Is there anything else that's out there? I mean, I think that our cases allow a routine, but there's no testimony about that, right? That's correct, Your Honor. I don't believe there was any testimony from the officers about what the routine practice is other than memorandum 02-4. That's their routine. Okay. Why didn't they just seize this stuff based on a probable cause search? There's all this testimony of marijuana buds, smelling cocaine, et cetera, et cetera. The district court found that there was not probable cause based on that information to seize the items, or at least the officers didn't know. Because of an adverse credibility determination regarding the officers' testimony on that? Not at all, Your Honor. There's no question of the officers' credibility in this case. So if they're credible and they're smelling drugs, why wouldn't there be probable cause? Well, Your Honor, and you noted, Your Honor, they called for the drug dog to come out to see. No drug dog came out. They proceeded. They had no choice, Your Honor. If they're doing a livestock impoundment, this gentleman had no registration. They had to do a livestock impoundment at that point. And if they're doing a livestock impoundment, they had to do an inventory, regardless. They just made a judgment then that while they had some information that there might be drugs there, they were going to be more certain by getting the dogs there. That's correct. In the meantime, they were going to do an inventory search. That's correct, Your Honor. And they went into the trunk, and in the trunk is the bag. I believe it was a Nike bag. They look inside. There's a shoebox. They open the shoebox. There's drugs. Who issued the – well, did the probable cause affidavit mention what was found in the shoebox? That's not in the record. No, for the search warrant. Just out of curiosity. Yeah, I don't know what the – To get the warrant. I haven't seen the search warrant affidavit. I believe that was a state search warrant. Okay. It was obtained through the state system because of the hour. I think it was late at night by the time they obtained the search warrant, Your Honor. So – In all likelihood, it would have. I would imagine so, Your Honor. If it wasn't. Yes, I would be. Unless you wouldn't be here, probably. That's probably correct. And I also do want to point out the discussion of United States versus Salmon. Judge Hardiman, you were correct that in Salmon, the difference between this case and Salmon is that – and this is a direct quote – no standardized criteria or routine governing the scope of inventory searches existed in that case. That's what makes – that's one of the things that makes that case very different from this case. Another thing is that case, I believe there was – I believe the gym bag was actually open in the trunk, and they could see either the guns in there or the outline of guns in the gym bag. So that's also a different situation here. And again, the buzzwords closed container don't have to appear in the policy for the policy to satisfy constitutional muster. That's United States versus Richardson out of the Seventh Circuit. It was enough for the inventory to say that the contents of a vehicle be examined in inventory. That was found to be sufficient. United States versus Thompson, it was enough that the – I mean, if the whole purpose is to look for things of value, then you have to look at containers. That's exactly right, Your Honor. That's why I said that – If you found a little tiny ring box, the way rings come in, don't you have to open the ring box to see if it actually is a ring or empty? Yes, Your Honor. If there – in order to protect against claims of lost or stolen items, absolutely, they have to look inside and say what's in there in order to adequately inventory the contents of the vehicle. And the point of the cases that culminate in Wells, the point of those cases is that the inventory policy must sufficiently limit discretion to prohibit a general rummaging for evidence. Now, an example of general rummaging for evidence could be tearing up the carpets during an inventory search, looking for hidden compartments within the car. I mean, that's not what happened here. This was clearly an inventory search. And the policy at issue here satisfies the Supreme Court precedent because it does provide sufficient guidance and scope to the inventory search in this case. If you found a suitcase in the trunk and the suitcase was not locked, but it was closed and the latches were down, I take it you would say you can open the latches and look in the suitcase because if you didn't and just inventoried a suitcase, then if there was stuff in there that was later missing, the police department would be liable. On the other hand, if those latches are locked, this policy says you can't force them open on the assumption that because they're locked, any claim that somebody went in there and took things would not be likely to succeed, even though a claim could be made. That's exactly right, Your Honor. An open container poses more of a threat of loss or claims of lost or stolen items. Not an open container. An unlocked closed container. Yes, Your Honor. Excuse me. That does pose more of a threat, whereas a closed container, the police can protect themselves against threats of claims of lost or stolen items by listing it as a locked suitcase on the inventory. To be clear, a police department could have a policy that says don't look in closed containers. They could, Your Honor. They're not taking a risk doing that, but there would be nothing to preclude them from doing that. That's correct, Your Honor. And the question here is? Well, the question here is you didn't mention containers at all. You said areas. Yes, Your Honor. And the question is whether it's reasonable for a reasonable officer to assume an area is the same as a container. That's right, Your Honor. And other circuits have found that it was perfectly reasonable to not use the words closed container and the inventory policy was still valid, and there's no reason for this court to find any different than those circuits. Just so we can be clear, you're saying that area and container should be equated. They should be. I'm not saying that area is the same. Or area is broad enough to cover this situation. Yes, Your Honor, exactly. It is broad enough that the officers can use their discretion to determine, without going into any locked area, going into only accessible areas, they can inventory items that they find, and the only way to inventory for personal items of value or personal property is to look in unlocked closed containers. So if three years from now the Public Defender's Office finds that in only 72% of the inventory searches, does the Philadelphia Police Department look in unlocked closed containers, then you've got a serious constitutional problem on your hands, right? I don't think so, Your Honor. I think the United States Supreme Court precedent and all the cases interpreting that precedent allow officers some discretion. Whoa, whoa. You just told us that in order to inventory personal property of value, it necessarily requires that you look in an unlocked closed container. And your answer really concerns me now because what you're suggesting now is that when the police officer sees a guy who he thinks is an okay guy, he doesn't have to look in his unlocked closed containers. But when he sees a guy he thinks is a bad guy, he can look in his containers. Isn't that precisely the evil that Wells is trying to guard against? Not exactly, Your Honor. The evil that Wells is trying to guard against is a general rummaging for evidence. Wells is trying to guard against treating different people differently based on race or the kind of car you're driving or who knows what other individualized characteristics. The whole point here, it seems to me, I don't know if my colleagues agree, is that the policy needs to be standardized. The policy is standardized, Your Honor, but that doesn't mean it's not really possible to devise a policy that erases all police discretion in every case. Well, I understand that. They don't need to inventory the gum wrapper or the broken pencil or the penny. Maybe they have to inventory the quarter or the dollar but not the penny. But I think you've told us they have to look in the closed container because you can't determine whether something of value exists until you do so. I'm saying they're permitted to look in the closed container. But not required. Well, they're required to do an inventory search, absolutely. There's no question of that once they do a livestock impoundment. Let me ask it this way. Tell us a closed container that they don't have to look in because it's intellectually clear that there's no personal property of value contained therein. Well, an example might be a closed container that they can see through, for example. Let's say a clear plastic bag. All right, it's a clear plastic bag with a broken oatmeal raisin cookie in it.  I think we're looking at property here of value that could be subject to the claim of loss or theft. Based on what Judge Hardeman said, you've confused me a little bit now, too. Now it kind of depends on the person. If it was a person from New Jersey, say, who was driving the car, you'd say, oh, no problem, I don't need to open the box, but he's from Pennsylvania and looks shaky. Absolutely. So we should open it up? That's not what I'm saying at all, not at all. What I'm saying is that it depends on the nature of the container, not the nature of the person driving the car. It depends on the situation as far as what the officers come upon. I mean, there's innumerable items that they could come upon. All right, but any opaque container, though, they're going to have to open any opaque container. Yes, Your Honor. If they're going to do an inventory, I mean, they have to do that. If they're going to list, if they're required to find out what property of value is in that car to protect the police department against claims of loss or theft, they have to do that. Also, they have to do it to protect the police department. What if there's a gun in there? What if there's a bomb in there? I mean, that sort of thing. It's just – I understand all that, but what – so, well, I mean, are you saying in every case they would have opened this shoe box? Most likely, yes, Your Honor, absolutely. And what I'm saying, though, is that in this case it was proper for them to do so, pursuant to Memorandum 02-4. There was nothing invalid about this inventory search. It's going beyond that, though. It would have been improper for them not to do it. It would have, Your Honor. If they're doing an inventory search. That's correct. Because nothing's to stop the defendant, you know, six months later from saying, I had $10,000 in there and it's gone and suing the police department for it. I mean, the officers here were just doing their job. It would be a better policy if it were more detailed. Absolutely. I think it would be great if it had a closed container in there. As it exists. Yes, Your Honor. Right. The question here is not whether, you know, what is the perfect policy. The question is whether this policy satisfies constitutional muster. And it does, Your Honor. Out of curiosity, have they changed the policy at all? Not that I'm aware of. Okay. Not that I'm aware of. I see that my time is up, but thank you very much. Thank you. The further question, which we won't ask you, is whether if they ask your advice, what would you tell them? What we won't ask is that. The court in Salmon looked at exactly what the government just discussed. How do we deal with the fact that there's a potential danger? How do we deal with the fact that there are potentially items of value in the vehicle? And what the court said is, it is not enough to say search. You have to say something about the scope of the search. And there is nothing in this policy that says anything about the scope of the search. Now, a couple as of the. Well, that's a little overstatement, isn't it? Don't open lock containers. It says something about the search scope. Scope as to closed containers. You're correct. You're correct. It says nothing about the scope as to the search of closed containers. We're back to the argument about whether telling them don't open lock areas is the same or also tells them don't open lock containers. I think that's right. And the government is correct that some of the case law says you don't need to use the buzzword container. But if the court looks at those cases, those policies very specifically define what to do with closed containers without using the word closed container. And so that is not to say that the policy need not address closed containers at all. It's just to say that the word container doesn't need to appear, but language suggesting the container does. So, for instance, in Richardson, the policy to search where people would ordinarily store property. Or in Proctor, to search containers such as boxes or suitcases. It doesn't have to be the buzzword, but it does have to be with regard to closed containers. And that's what Salmon says. Now, the government cited to Frank for the proposition that there doesn't need to be a policy. But Frank actually cites to an unwritten standard operating procedure, which was followed. So, again, that's a distinction between that case and this one. With respect to the – Well, here we have a written policy procedure that they say was followed. You're just challenging whether this policy addresses your client's situation. Correct. And in Frank, the unwritten policy did. And here we have neither a written policy nor an unwritten policy that addresses the situation. And I think that the government's argument about the inventory and whether the inventory was completed is instructive. The policy requires not only that an inventory be completed, but that citations be written. And here, the officers wrote the citations. The officers did not write the inventory. And issuing property receipts is not the same as writing an inventory to the vehicle. But why don't they have the right to transfer this from a livestock to a narcotics investigation? Isn't that the normal, prudent thing to do? But it doesn't mean that a livestock hasn't occurred and that the livestock policies don't need to be followed. It means the livestock has occurred and then it has ceased. And the paperwork should be completed accordingly. And the paperwork should say, here's our inventory, we turned it over to narcotics, rather than filling out the paperwork that says what we did with the owner and what we did with the vehicle. So that the property receipt does not contain, and this is on the same page the government cited, page 61 of the transcript. It doesn't indicate the Mercedes toolkit, for instance. The property receipts only indicate the contraband. And that's the difference. When the government says the property – But all this goes back to whether it was a pretext. Well, what this goes back to is the issue of the importance of balancing those interests and in having a policy that balances those interests. But I mean it's only relevant to pretext. It's relevant to pretext, but I think it's also relevant to the importance of having a particularized policy. Because it demonstrates that even in this particular case, there's a blurry line that the policy would have made clear. So you're saying that the policy is constitutionally deficient because it didn't specifically state you must complete the inventory even if the – No, the policy does state that. The policy does state that. It didn't happen, so your only argument is that it's pretext. It's evidence of pretext. No, my argument is that it is evidence of pretext. That is true. But my argument is that the policy is not sufficiently narrowing if the procedures don't dictate that the interests of the driver are protected. Well, that's – it does. I thought you just told me a minute ago that it says the policy does require an inventory to be completed. It does. They didn't do it in this case. That's correct. They've explained why. Now, what's the deficiency in the policy with respect to whether or not the inventory should be completed? It's not a deficiency with the policy. Well, then it's only pretext. I think we're having a semantic disagreement about this. What I'm saying is, in addition to pretext, that these facts point out the importance, as a general matter, as discussed in Wells and Bertin and the rest of the case law, of having a policy that sets a balance. It's not just saying those officers did the wrong thing. So I'm sorry if I wasn't clear about that. Thank you. Thank you, Counsel.